I do not have significant additional comments beyond what I've stated in my opening and my reply brief. So if the justices have any questions, I'd be happy to answer. You know, people say there is no justice on the Ninth Circuit. We are judges, not justices. I know in the California appeal system, the appeal courts are justices, but we're not. I apologize. Okay. You just want to submit it on your brief? Well, I mean, I can basically summarize. I think any comments I would make, I would like to make in regards to the insufficiency of the evidence argument that I made. Okay. Proceed. In this case, the evidence of the one of the aliens, alien images was presented by third party witnesses who hearsay and questionable reliability. In what sense? Well, first of all, one of the witnesses that testified as to the alienage of the missing witness was, in fact, a surety that posted the bond. I would submit to the court that since that surety was on the hook for the amount of bond posted, that there is some bias inherent in that. Exactly. But that's a matter of credibility for the jury to decide. Certainly. It doesn't make the evidence insufficient. Certainly. Also, there is no indication that the witness had personal knowledge of the witness's birth in Mexico. Even if that were so, as I've pointed out in my briefs, even foreign birth can grant citizenship upon a child either through derivative citizenship if one of the parents or even grandparents is a U.S. citizen or if the parents become naturalized during the child's minority. So foreign birth by itself does not prove alienage. Okay. Which person are you talking about in terms of the lack of proof of alienage? You're talking about the missing witness? The missing witness. Yes, Your Honor. The other point... The witness for the government said that the two of them had grown up in the same town and that he was married to Villanueva's cousin. You don't think that's sufficient evidence of alienage? No, Your Honor, because they could have grown up in the same town, and either a parent or a grandparent could have been a U.S. citizen, and so the child could have gotten derivative citizenship. I understand that, but when we're reviewing for sufficiency of the evidence, all reasonable inferences are drawn in favor of the government's evidence. So while there may have been an inference, you know, to the contrary, there also could be an inference that because he was born in Mexico and grew up in Mexico, that he was a citizen of Mexico. That's a reasonable inference for a jury to draw from the evidence, isn't it? Well, I don't think the witness had testified to that, indicated in any way that he had personal knowledge of the missing witness's birth in Mexico. Well, he said he was married to his cousin and they grew up together. Right, and so it would be hearsay evidence. I don't know whether the witness, there's no indication that he had personal knowledge, that he was present at the birth, that he had seen a birth certificate or anything. Right, but that's not required, is it, in order to support a reasonable inference. You don't have to witness someone's birth to testify as to, you know, where they, your knowledge about their birth or that you grew up with them. Well, you know, the cases that have discussed that largely are cases where there were statements made by the declarant, him or herself, about his or her birth in a specific time. My sister was born in Kannapolis, North Carolina. I grew up with her. I wasn't present at her birth. So you say I can't testify about where my sister was born because I was not in the delivery room when she was born? Your Honor, I would, yes, I would argue that that is hearsay. Now, if Your Honor were a party to an action and, or in Your Honor's example, if Your Honor's sister were to say that she was born in a certain place, that certainly under the rules is admissible hearsay because it's the declarant's own statement. But from a third party, I believe that that is hearsay. And what about the fact that they grew up in the same town? What about that statement? I don't think that adds anything. I believe that the Hernandez case that I cited went through each one of these factors and indicated that by themselves they would not be sufficient. By themselves, but here we don't have one thing by itself. We've got several factors. Right. But again, my, well, the factors that the government cites, really I don't think any of them indicate either by themselves or in combination that there was a reliable, that there was reliable proof of alienage. Okay, counsel, we understand your argument. You might want to save your time for rebuttal and see what the government has to say about that issue. Thank you. This is how neurotic I am. Good morning, Your Honors. Thank you. My name is Jason Forge. I'm here for the United States. Your Honors, I do want to begin by apologizing to the Court and to Ms. Brower for a couple of errors in our brief. And specifically, I want to call Your Honor's attention to and Ms. Brower's attention to page 11 of the government's brief. In discussing the motion to elect between charging theories, we stated in our brief that there is no evidence in the record that Jolly joined in this motion, the motion of his co-defendant. Ms. Brower accurately pointed out in her reply brief that, in fact, there was an oral motion to join that was reflected in the docket. And our astute law clerks caught that. My compliments to them as well, Your Honor. In addition, at page 15 in our brief, Your Honors, there was the argument made that the essential element that was the basis for the Rule 29 motion before the district court is different than what Mr. Jolly is now advancing on appeal. That also is not accurate. And based on my reading of the record, I think it's pretty apparent that it's the same Rule 29 argument, as Ms. Brower just finished arguing, the argument concerning the sufficiency of the evidence regarding the alienage of Mr. Amante, who was the material witness for Counts 3 and 4. All right. Okay. With those apologies, please proceed. Returning to the argument that Ms. Brower was making, and specifically the Hernandez case, which is essentially the exclusive basis for the argument regarding the sufficiency of the evidence attack, the Hernandez case is a corpus delicta case. It's a case in which this Court is examining the sufficiency of corroboration for a defendant's confession. It's not the same thing as the situation where we have here, where there are three different witnesses who are testifying about various facts from which an inference could clearly be drawn that Mr. Amante was, in fact, an undocumented alien. There are very compelling reasons and decades of cases supporting the need for corroboration where the only evidence is a defendant's confession. And that is the reason why the need for corroboration has been established in those contexts. Here we have a different context, because it's not the defendant's confession that's being used. It's the statements by several independent witnesses, several third-party witnesses, who are being used by the United States to draw the inference for the jury, for the jurors to draw the inference, that Mr. Amante was, in fact, an undocumented alien. What is that evidence? Your Honor's touched upon some of it. The testimony from Mr. Villanueva, the surety. Now, and again, he testified that Mr. Amante was born in Mexico and they grew up in the same town together. The appeal does not challenge the admissibility of that statement. The appeal challenges the sufficiency of the evidence. So you think the hearsay objection was waived? For appeal purposes, yes, Your Honor, I do, because that was not a basis for the appeal. Mr. Amante, his testimony that, certainly, I don't think it falls squarely within the exception for statements of family history. No, because that's only by the declarant. Correct. But he certainly, having grown up in the same village with Mr. Amante, having known him all of his life, having testified that Mr. Amante did not speak English, he only spoke Spanish, given the length of time that he had known Mr. Amante and the circumstances, the fact that he's married to his cousin, it would seem that he would certainly have a valid basis for himself to draw the impression. Based on all of these factors, Mr. Villanueva, what was your impression as to where he was born? Well, my impression was he was born in Mexico. It would seem that would be a fair inference for him to be able to draw, given his personal history with Mr. Amante. But Mr. Villanueva was not the only witness who presented facts from which the jurors could have inferred that Mr. Amante was, in fact, an undocumented alien. We have, of course, the testimony of the other two material witnesses, one of whom accompanied Mr. Amante when they were essentially negotiating to be brought into the United States. That's Mr. Amezcua? Yes. Is that how we pronounce it, Amezcua? Yes, it's Amezcua. I wasn't present for the trial, but I think that's how it would be pronounced. But he was present with Mr. Amante when it was explained to them that it was going to cost them $1,500 to be brought into the United States. An additional material witness who was in the same group that wound up meeting up together and wound up getting into the same vehicle driven by Mr. Jolly also testified that he was to pay $1,500 to be brought into the United States. And Mr. Amezcua and the additional material witness, Mr. Gonzalez, also testified to the circumstances that brought them to the United States in terms of walking through the hills for over an hour. They wound up meeting up together, the two groups, and waiting, I believe Mr. Gonzalez testified, for hours into the night in a river in order to be picked up. And then once they were picked up, of course, they were put into the back of a truck where Mr. Jolly then proceeded to flee from Border Patrol. Now, all of these circumstances, I agree with Ms. Brower, they do not establish conclusively or irrefutably that Mr. Amante was in fact an undocumented alien. Because there's always the possibility, given these facts and circumstances, that there was some derivative citizenship claim. It's possible, if the jurors discredited Mr. Villanueva, that Mr. Amante naturalized at some point in his life. But, as Judge Rawlinson pointed out, the standard here is not whether it was conclusively or irrefutably established. The standard, when we're talking about sufficiency of the evidence, is whether or not, when the evidence is viewed in the light most favorable to the government, whether any rational prior of fact could conclude that the element was met. And I think it's overwhelmingly clear that under the facts and circumstances presented at this trial, a jury certainly could conclude that Mr. Amante was in fact an undocumented alien. And so I think the sufficiency of the evidence claim should fail for that reason. Moving on, Your Honors, to the questions concerning the financial gain aspect of this case. What is critical in assessing the financial gain argument here, Your Honors, is not the back and forth that occurred between counsel prior to trial regarding election of charging theories. What is critical to look at regarding financial gain here is what theory was presented to the jury. What was argued to the jury? The only evidence presented to the jury was that Mr. Jolly was an aider and a better. Both of the material witnesses who testified, testified that they did not negotiate with Mr. Jolly, that they were not brought to the United States by Mr. Jolly, and that to their awareness, his first involvement with this enterprise was after they were already north of the border and he called to them with pay loan, the code word they were using, in order to summon them to his vehicle. So, counsel, would you agree that if Mr. Jolly had been charged as a principal, the prosecution would have had the burden to show that he committed the offense for a financial gain? Under Munoz, yes, Your Honor. I believe if he was charged solely as a principal and the evidence was that he was, that he actually brought these aliens into the United States, yes, under Munoz, I would agree. But your argument, then, is because the government presented an aider and a better theory of prosecution, all you need to prove is that someone did it for, someone committed the offense for financial gain. Precisely. And let me just emphasize, not only was the evidence solely in the aider and a better camp, but also, I'll refer you to, this was not in the excerpt of record, but it's in the second transcript of the trial. So, Your Honors do, it's my understanding, have the transcript from the trial. And at page 64 of day two, and I'm quoting now from the closing argument from the United States, now the second charge, there's three counts to the second charge. This is a financial gain count. And clearly, the defendant did not bring in the illegal aliens. We know that. So, not only is the evidence solely going towards an aider and a better theory, but the argument is confirming that. In the very next page, at page 65, the argument goes, it doesn't matter whether he brought them in or not. What matters is whether he was helping somebody else who was making sure they get brought in. And Ms. Brower also acknowledged in her argument what the government had conceded and what the evidence solely addressed. And this is at page 68 of that same transcript, day two of the trial. Yes, the prosecutor's correct. The law doesn't require that the aliens pay Mr. Jolly directly. But we had to know that there was financial gain involved, and we simply don't know that in this case. She says at page 73, when we return to the financial gain, so let's look at counts one, three, five again, involving bringing in aliens for financial gain. Again, it's clear he didn't bring them in. The prosecution conceded that. So we really don't have a dispute, despite the fact that we declined to elect between charging theories in advance of trial. It is clear that at trial, it was an aiding and abetting theory. And so then, Judge Rolison, just to kind of bring this full circle to your question about whether the aiding and abetting then is enough, in the excerpt of record at page 187 is the jury instruction for the aiding and abetting. And what we see is, in the introductory paragraph, states that a defendant may be found guilty of bringing in an illegal alien for commercial advantage or private financial gain, even if the defendant personally did not commit the act or acts constituting the crime, but aided and abetted in its commission. And that's clearly describing the situation that was presented to the jurors. Then the very first element requires that the jury find beyond a reasonable doubt that first, the crime of bringing in an illegal alien for some commercial advantage, I'm sorry, for commercial advantage or private financial gain was committed by someone. And then the instruction concludes by requiring that the jury find the evidence must show beyond a reasonable doubt that the defendant acted with the knowledge and intention of helping that person commit the crime of bringing in an illegal alien for commercial advantage or private financial gain. I think it's clear under both Munoz and under Sai that this instruction meets the test. That is what the jurors were supposed to be instructed and that is what the government was required to prove and that is what the jury necessarily found the government did in fact prove beyond a reasonable doubt by virtue of its verdict. In terms of the final two issues raised on appeal, the duplicity and the unanimity requirement, I think that they are clearly dealt with by Garcia. And given the evidence here and the fact that the sole theory at trial was aiding and abetting, I don't think that those issues withstand scrutiny that Your Honors will be applying here on appeal because under Garcia and the facts of this case, there clearly was no problem with this being a duplicitous indictment and there was no need for unanimity instruction. Do Your Honors have any further questions for me on any of the issues here? Thank you, counsel. Thank you, Your Honors. Rebuttal. Your Honors, very briefly. In regards to the alienage issue, it doesn't make any sense to me to have a more lenient standard of admissibility when the information regarding alienage comes from a third party rather than from the defendant or the declarant, him or herself. The evidence of alienage in Hernandez actually was far greater than the evidence was in our case. Mr. Hernandez had made, the defendant in that case, it was Mr. Hernandez, had made two statements admitting alienage. And again, all the factors that were cited by the government, I would submit, are neutral and do not establish alienage. In regards to the financial gain issue, I do feel that under Munoz, since the government was charging Mr. Jolly under both aiding and abetting and as a principal, that the requested instruction should have been given, as it's really unclear in this case, whether the jury convicted Mr. Jolly on an aiding and abetting theory, which would have allowed the government more leeway in proving financial gain than as a principal. And I'll submit it for that. Thank you, counsel. Thank you to both counsel. The case just argued is submitted for decision by the court. And this court stands in recess.
judges: Leavy, Rawlinson, Mahan